UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| EVON GROSSBERG, | : |
| Plaintiff, | : Civil Action No. 15-1456 (SRC)(CLW) |
| v. | : AMENDED OPINION |
| HUDSON COUNTY DEPARTMENT OF SOCIAL SERVICES, | : |
| Defendants. | : |

**CHESLER**, District Judge

The opinion filed on July 13, 2017, is hereby amended as follows.

Plaintiff Evon Grossberg ("Plaintiff") brings this action against Defendant Hudson County Department of Social Services ("Defendant"), alleging employment discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq. Plaintiff also asserts a state common law claim for intentional infliction of emotional distress ("IIED"). Now before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil procedure 56. (ECF No. 19.) Plaintiff opposes the motion. (ECF No. 23.) The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion will be granted.

I.       BACKGROUND

Plaintiff is a 61 year-old African-American female.  (ECF No. 21, Plaintiff's Statement of [Additional] Undisputed Material Facts ("SAUMF"), ¶¶ 1-2.)  In November 2007, she began working as a human services specialist for Defendant.  (ECF No. 19, Defendant's Statement of Material Facts ("SUMF"), ¶ 1-3; SAUMF ¶ 6.)  In July 2013, when Plaintiff was approximately 58 years old, she applied internally for a position as a provisional training technician.  (SAUMF ¶ 9, 13.)  She was interviewed for the position by Roger Quintana, Director of Personnel for Defendant.  (SUMF ¶ 5.)

Thereafter, Plaintiff contacted Mr. Quintana by phone to inquire about the status of her application.  (SUMF ¶ 6.)  During that conversation, Mr. Quintana informed her that "someone else" had been offered the position.  (Id.)  This "someone else" was one of Plaintiff's co-workers, who was also employed as a human services specialist.  (SUMF ¶ 6.)  The co-worker was a female of Egyptian descent, approximately 20 to 25 years of age.  (ECF No. 19-2, Certification of Michael L. Dermody ("Dermody Cert."), Exhibit B, Deposition of Evon Grossberg (Grossberg Dep."), 21:12-21:15; SUMF ¶ 15.)  She was not African-American.  Grossberg Dep. 21:14-21:15)

Subsequently, Plaintiff spoke with two representatives from the union to which she belonged.  (Grossberg Dep. 22:25-23:21.)  During that conversation, Plaintiff "let [the representatives] know that [she] put in for a position as provisional training tech," that a co-worker was "being promoted in this position," and that she "wanted to know why [she] was not considered for the job."  (Id.)  The union representatives "said [that] they would get back to Plaintiff on it."  (Id. at 23:22-23:24.)  Immediately thereafter, Plaintiff began a voluntary month-long furlough, from early August 2013 to early September 2013.  (SUMF ¶ 9; Grossberg Dep.

24:9-25:3.) During that time, Plaintiff had no contact with Mr. Quintana, her co-workers, or the union representatives. (Grossberg Dep. 29:4-15.) She did fill out an online intake questionnaire for the Equal Employment Opportunity Commission ("EEOC"), in anticipation of a visit to an EEOC field office. (ECF No. 22, Certification of Evon Grossberg in Opposition to Defendant's Motion for Summary Judgment ("Grossberg Cert."), ¶ 26, Exhibit E.) Plaintiff would later file charges of discrimination with the EEOC against Defendant in November 2013. (SUMF ¶ 12; Grossberg Dep. 26:3-6, 27:3-9.)

During the furlough, in early September 2013, Mr. Quintana sent Plaintiff a memo informing her that Defendant had in fact decided to extend Plaintiff an offer for the provisional training technician position. (SUMF ¶ 10; Grossberg Dep., 29:21-30:1, 30:23-31:1.) Plaintiff received this memo on September 9, 2013, her first day back from furlough. (Grossberg Dep., 28:16-21; 30:23-31:4.) On that day, Plaintiff's supervisor also told her that Plaintiff had received the promotion, and Plaintiff began work as a provisional training technician immediately. (SUMF ¶ 11; Grossberg Dep., 32:5-12; 39:2-7.) The co-worker, who had also been offered the position, began work on that day as well. (SUMF ¶ 13; Grossberg Dep., 39:2-7.) Subsequently, Plaintiff passed a civil service exam relating to the position, and she became a permanent training technician in June 2014. (SUMF ¶ 11, 21.) As of August 2016, when Plaintiff's deposition was taken for the instant action, Plaintiff was still employed as permanent training technician. (SUMF ¶ 22.)

After Plaintiff's promotion in September 2013, several incidents occurred involving Plaintiff's co-workers which are relevant to the instant action. In October 2013, a co-worker "aggressively" placed papers in front of Plaintiff. (Dermody Cert., Exhibit C, Diary-like document from October 2013 to April 2, 2014 ("Plaintiff Diary"), at 3.) In November 2013, a

3

different co-worker stated to Plaintiff's supervisor that "old timers" were the "ones . . . leaving [work] early," a comment that Plaintiff heard. (Id. at 5.) In February 2014, several months later, a different co-worker "interrupted" Plaintiff while Plaintiff was helping a student and took control of a keyboard and mouse that Plaintiff was using. (Id. at 8.) In March 2014, Plaintiff asked a co-worker whether the co-worker "was . . . ok," to which the co-worker replied that "she was fine." (Id. at 9.) After Plaintiff then "asked what is going on," the co-worker said that "she felt threatened" by Plaintiff. (Id. at 9.) In June 2014, a different co-worker "slammed" papers down on a table in front of Plaintiff. (Id. at 13.) Later that day, the same co-worker stated that Plaintiff thought of herself as "holy and nice." (Id.) Approximately one year later, in June 2015, Plaintiff's supervisor stated to Plaintiff that her employment could be terminated even though Plaintiff was by that time a permanent training technician. (Id. at 15.)

     Plaintiff commenced the instant action in February 2015. Her complaint alleges claims for race-based employment discrimination, hostile work environment, and retaliation in violation of Title VII (Counts IV–VI) and Section 1981 (Counts VII–IX); age-based employment discrimination, hostile work environment, and retaliation in violation of the ADEA (Counts I–III) and NJLAD (Counts X–XII); and common law IIED (Count XIII). Defendant now moves for summary judgment, raising essentially three arguments. First, Defendant contends that Plaintiff's Section 1981 claims are barred by 42 U.S.C. § 1983, part of the Civil Rights Act of 1871, because the latter is the exclusive federal remedy for violations of rights guaranteed by Section 1981 by state governmental units. Second, Defendant argues that Plaintiff cannot establish a prima facie case for any of her remaining employment-related claims under Title VII, the ADEA, and NJLAD, as required by the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Third,

4

Defendant argues that Plaintiff's IIED claim is barred by New Jersey's Tort Claims Act ("TCA"), N.J. Stat. Ann. § 59:1-1 et seq., because Plaintiff failed to file a 'notice of claim' in accordance with the TCA.

## II.    LEGAL STANDARD

A moving party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

On a motion for summary judgment, the moving party bears the burden of establishing the basis for its motion and of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must show that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The nonmoving party cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

5

**III.    DISCUSSION**

1.    *Plaintiff's Section 1981 Claims*

As Defendant suggests, Section 1983 is "the exclusive federal remedy for violations of rights guaranteed by Section 1981 by state governmental units." McGovern v. City of Phila., 554 F.3d 114, 117 (3d Cir. 2009); see Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 731, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989). Thus, Section 1983 precludes Section 1981 claims against state and local governments. For this reason, Plaintiff must bring any claims against Defendant based on purported violations of Section 1981 under Section 1983. Id. at 121-22. Because Plaintiff has failed to do so, the Court will grant summary judgment in favor of Defendant as to Plaintiff's Section 1981 claims.

2.    *Plaintiff's Remaining Employment Discrimination Claims*

Under Title VII, the ADEA, and NJLAD, it is unlawful for an employer to fail or refuse to hire an individual; to discharge an individual; or otherwise to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of his or her employment because of a protected characteristic of that individual. 42 U.S.C. § 2000e-2(a)(1); N.J. Stat. § 10:5-12(a), or age, 29 U.S.C. § 623(a)(1); N.J. Stat. § 10:5-12(a). Under each of these statutes, a claim for employment discrimination that relies on circumstantial evidence is to be analyzed under the burden-shifting framework set forth in McDonnell Douglas. Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006); Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015); Battaglia v. United Parcel Serv., Inc., 214 N.J. 18, 546, 70 A.3d 602 (2013). Under that framework, a plaintiff must first establish a prima facie case for employment discrimination. The elements of that prima facie case are essentially the same under Title VII, the ADEA, and NJLAD: a plaintiff must show that (1) he or she was a member of a

6

protected class under the applicable statute; (2) he or she was qualified for the position in question; (3) he or she suffered an adverse employment action; and (4) the adverse action gives rise to an inference of unlawful discrimination.  Jones v. Sch. Dist. Of Philadelphia, 198 F.3d 403, 412 (3d Cir. 1999); Willis, 808 F.3d at 644 (citing Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013)); Victor v. State, 203 N.J. 383, 408, 4 A.3d 126, 141 (2010).  If a plaintiff succeeds in establishing a prima face case, the defendant employer must articulate a legitimate nondiscriminatory reason for its conduct.  If the employer succeeds in demonstrating such a reason, the plaintiff must show that the employer's proffered reason was pretextual.

As the language of Title VII, the ADEA, and NJLAD each suggest, a plaintiff may establish the third element of his or her prima facie case—an adverse employment action—by showing that the employer failed or refused to hire the plaintiff or that the employer discharged him or her.  Alternatively, a plaintiff may show that he or she was the subject of employer conduct that was "'serious and tangible enough to alter [the] employee's compensation, terms, conditions, or privileges of employment.'"  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).  With respect to the second of these showings, sufficiently "serious and tangible" adverse conduct, the Third Circuit has instructed that "direct economic harm is an important indicator."  Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999).  Indeed, even indirect economic harm, such as when an employee's earning potential "substantially decreases," is an indictor.  Id.  Accordingly, the Third Circuit has found that conduct which does not bring about a material change in an employee's salary or benefits, such as a lateral transfer or a mere change of title, does not constitute an adverse employment action under these circumstances.  See Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 235 (3d Cir. 2016).

7

Here, the record before the Court contains no evidence from which a trier of fact could reasonably infer that Plaintiff suffered employer conduct that rose to the level of an adverse employment action. In the first place, there is no evidence from which a fact-finder could reasonably conclude that Defendant failed or refused to hire Plaintiff. Although, as is undisputed, Defendant's representative initially told Plaintiff that Defendant would not be extending her an offer, that offer was made shortly thereafter. Plaintiff was not required to submit a new application or interview again for the position, and she began working in the new position on the same day as the co-worker who had received an earlier offer. The undisputed facts also show that Plaintiff has continued in this position through the pendency of this litigation.

Second, the motion record contains no evidence from which a trier of fact could reasonably conclude that Plaintiff was the subject of conduct that was serious and tangible enough to alter the compensation, terms, conditions, or privileges of her employment. For example, Plaintiff has brought forth no evidence showing that the delay in the offer she received resulted in any delay in her start date or any delay in a salary increase that she would otherwise have received.

Therefore, with respect to Plaintiff's race-based and age-based employment discrimination claims, the Court finds that Plaintiff has failed to bring forth evidence creating a genuine issue as to whether Plaintiff suffered an adverse employment action. Consequently, the Court will grant summary judgment in favor of Defendant as to Plaintiff's employment discrimination claims.

3.      *Plaintiff's Hostile Work Environment Claims*

Claims for hostile work environment under Title VII, the ADEA, and NJLAD are also to be analyzed under the McDonnell Douglas framework.[1]  To establish a prima facie case for hostile work environment under Title VII or the ADEA, a plaintiff must show that (1) he or she suffered intentional discrimination because of a protected characteristic, such as race or age; (2) the discrimination was severe or pervasive; (3) it detrimentally affected the plaintiff; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for vicarious liability.  Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006)); Ullrich v. United States Sec'y of Veterans Affairs, 457 F. App'x 132, 140 n.6 (3d Cir. 2012) (citations omitted).  To establish a prima facie case for a hostile work environment under NJLAD, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she was subjected to conduct that would not have occurred but for that protected class; and (3) the conduct was severe or pervasive enough to make to alter the conditions of employment.  Victor, 203 N.J. at 409 (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)).

Under each of these statutes, then, a prima facie case for hostile work environment requires a showing that an employer's discriminatory conduct was "pervasive" or "severe" enough to negatively "alter the conditions of [the plaintiff's] employment and create an abusive working environment."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); Meritor, 477 U.S. at 67; Bouton v. BMW of N. Am., Inc., 29 F.3d 103, 106 (3d Cir. 1994); Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 20, 803

---

[1] Title VII's and NJLAD's prohibitions extend the creation of a hostile work environment.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L.Ed.2d 49, 60 (1986); Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993).  The Third Circuit has assumed, without deciding, that hostile work environment claims are also cognizable under the ADEA.  See Culler v. Sec'y of United States Veterans Affairs, 507 F. App'x 246, 249 n.3 (3d Cir. 2012).

9

A.2d 611, 623 (2002); Lehmann, 132 N.J. at 626.  To determine whether a plaintiff has satisfied this requirement, "a court must consider the totality of circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Mandel, 706 F.3d at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

The Supreme Court has instructed that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" sufficient to sustain a hostile work environment claim.  Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998); see Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 194 (3d Cir. 2015).  It has reasoned that such a bar is necessary to "ensure that Title VII [and similar statutes] do[] not become a 'general civility code.'"  Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81, 118 S. Ct. 998, 140 L. Ed. 2d 201(1998)).  Thus, "[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate . . . liability."  Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001)).

In the present case, considering the totality of circumstances, no fact finder could reasonably conclude that the few offhand remarks of Plaintiff's co-workers, although potentially offensive to Plaintiff, rose to the level "pervasive" or "severe" discrimination.  Nor could a fact finder reasonably conclude that Defendant's workplace "permeated with discriminatory intimidation, ridicule, and insult."  AMTRAK v. Morgan, 536 U.S. 101, 116, 122 S. Ct. 2061, 2074 (2002) (quoting Harris, 510 U.S. at 21).  Plaintiff has also supplied no evidence showing that the conditions of her employment were materially altered as a result of these remarks.

10

Simply put, the remarks are precisely the sort of isolated comments that the Third Circuit has held to be insufficient as a matter of law to sustain a hostile work environment claim.[2]

Therefore, the Court finds that Plaintiff has failed to bring forth evidence sufficient to create a genuine issue as to whether she can establish a prima facie case for her hostile work environment claims under Title VII, the ADEA, or NJLAD. Consequently, the Court will grant summary judgment in favor of Defendant as to those claims.[3]

4.  *Plaintiff's Retaliation Claims*

Under Title VII, the ADEA, and NJLAD, it is unlawful for an employer to retaliate against a person who participates in a "protected activity."  29 U.S.C. § 623(d); N.J.S.A. 10:5-12(d); 42 U.S.C. § 2000e-3(a).  Claims for retaliation under these statutes are also to be analyzed under the McDonnell Douglas framework.  To establish a prima face case for retaliation under

---

[2] In her Statement of Additional Facts and supporting certification, Plaintiff refers generally to "constant harassment, ridicule, verbal[] assault[] by her supervisors, physical[] assault[], constant[] critici[sm] for work performance issues without any valid reason, unreasonabl[e] critici[sm] [of] the way she was teaching, exclu[sion] . . . from work-related matters, including training programs, being ignored by co-workers and her supervisors, . . . , [and] being treated as an outcast by co-workers and management, . . . ." (SAUMF ¶ 43; Grossberg Cert. ¶ 45.)  Plaintiff states in her certification that such events are "contained in memos I wrote, many of which are included as part of exhibit C in the Certification of Michael Dermody." (Grossberg Cert. ¶ 46.)  Such generalized statements do not constitute the sort of "specific facts" necessary to create a genuine issue of material fact on a motion for summary judgment.  See Fed. R. Civ. P. 56(e).  Plaintiff's reference to the "memos [she] wrote . . . included as [a] part of exhibit C" also does not constitute a proper "citat[ion] to particular parts of materials in the record," as required by Fed. R. Civ. P. 56(c). Accordingly, both the generalized statements and Plaintiff's general reference to memos she wrote may be disregarded for purposes of this motion for summary judgment.

[3] This Court issued its initial opinion explaining the reasons for granting summary judgment in favor of Defendant on July 13, 2017.  On July 14, 2017, the Third Circuit issued an opinion in Castleberry v. STI Grp., No. 16-3131, 2017 U.S. App. LEXIS 12611 (3d Cir. July 14, 2017), in which it clarified the standard for establishing a prima facie case for hostile work environment under Section 1981 and similar statutes, such as Title VII and the ADEA. In particular, the Third Circuit stated that, to prevail on a hostile work environment claim, a plaintiff need only show that the alleged discrimination was "severe or pervasive," Castleberry, 2017 U.S. App. LEXIS 12611, at * 6 (emphasis in original), i.e. with a disjunctive, rather than 'severe and pervasive' or 'pervasive and regular.'  In this Court's initial opinion, dated July 13, 2017, it cited and followed Third Circuit and Supreme Court case law which had used the disjunctive formulation that the Third Circuit explicitly adopts in Castleberry.  Nonetheless, it bears noting that, having considered the Third Circuit's clarification, it is still apparent to this Court that Plaintiff has failed to establish intentional discrimination which was "severe" or "pervasive" for purposes of this motion for summary judgment.  Specifically, Plaintiff has failed to establish that any of Plaintiff's co-workers' remarks was "severe" enough to sustain a hostile work environment claim, and she has failed to establish that the remarks as a whole were "pervasive" enough to sustain such a claim.  Simply put, no trier of fact could reasonably draw either conclusion from the evidence before the Court on the instant motion.  Therefore, the Third Circuit's opinion in Castleberry does not alter this Court's initial conclusions.

any of the statutes, a plaintiff must show that (1) he or she engaged in a protected activity under the applicable statute; (2) he or she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action.  Daniels, 776 F.3d at 193; Moore, 461 F.3d at 340-41; Battaglia v. United Parcel Service, Inc., 214 N.J. 518, 547 (2013); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

For purposes of a retaliation claim, an employer's conduct constitutes an adverse employment action if it "might . . . have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id. (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L.Ed.2d 345, 360 (2006)).  To establish the causation element of a prima facie case for retaliation, a plaintiff must provide evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse employment action."  Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) (internal quotation marks omitted).

A plaintiff can satisfy the causation requirement in two ways.  One is by showing that the "temporal proximity" between the protected activity and the adverse action is "unduly suggestive" of a retaliatory motive.  Daniels, 776 F.3d at 196 (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)).  Notably, the Third Circuit has held that a period of three weeks is not unduly suggestive.  Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).  A second way is by showing that the "the proffered evidence, looked at as a whole, [is] suffic[ient] to raise the inference."  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).  To this end, the Third Circuit has held that relevant evidence includes "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives

12

for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Daniels, 776 F.3d at 196 (citing LeBoon, 503 F.3d at 232-33; Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007).

Here, the record before the Court contains no evidence from which a trier of fact could reasonably conclude that Plaintiff suffered an adverse employment event. Surely, Plaintiff's promotion in early September does not support such a conclusion. The few offhand remarks of Plaintiff's co-workers, made months and years later, do not either. Though they may have been unwelcome, no trier of fact could reasonably conclude that they would have dissuaded a reasonable worker from pursuing a charge of discrimination.

Additionally, the record before the Court contains no evidence indicating a causal connection between any conceivable adverse employment action by Defendant and Plaintiff's protected activities. Certainly, the statement that Defendant would not be extending Plaintiff an offer could not bear a causal relationship to such activities because it pre-dated them. The remarks of Plaintiff's co-workers, on the other hand, were they assumed to constitute an adverse employment action, occurred far too long after Plaintiff's protected activities to be 'unduly suggestive' of a retaliatory motive, and Plaintiff has supplied no other evidence that would justify such an inference of causation.

Consequently, the Court finds that Plaintiff has failed to come forward with evidence that would create a genuine issue as to whether Plaintiff has satisfied the second and third elements of her Title VII, the ADEA, and NJLAD retaliation claims. Therefore, the Court will grant summary judgment in favor of Defendant as to those claims.

5.  *Plaintiff's IIED claim*

Tort actions brought under New Jersey law against public entities are governed by the TCA.  Brennan v. Norton, 350 F.3d 399, 431 (3d Cir. 2003); Velez v. City of New Jersey, 180 N.J. 284, 286, 850 A.2d 1238 (2004); N.J. Stat. Ann. § 59:2-1; N.J. Stat. Ann. § 59:1-3.  Under the TCA, litigants who wish to file claims against a local public entity must initially file a 'notice of claim' with the entity itself.  N.J. Stat. Ann. § 59:8-3; N.J. Stat. Ann. § 59:8-7.  That notice of claim must be filed within 90 days of "accrual of the claim."  N.J. Stat. Ann. § 59:8-8.  Alternatively, if "leave to file [a] late notice" has been granted, the notice of claim must be filed within one year.  N.J. Stat. Ann. § 59:8-9.

Here, Plaintiff has come forward with no evidence indicating that she filed a notice of claim with Defendant within the 90-day period required by the TCA.  Therefore, the Court will grant summary judgment in favor of Defendant as to the IIED claim.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment, pursuant to Fed. R. Civ. P. 56, is GRANTED.  An appropriate order shall issue.


　　　　　　　　　　　　　　　　　　　/s Stanley R. Chesler
　　　　　　　　　　　　　　　　　　STANLEY R. CHESLER
　　　　　　　　　　　　　　　　　　United States District Judge

Dated: July 18, 2017